**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

KATHLEEN PEQUIGNEY,

                 Plaintiff,

-vs-                                         Case No.  2:11-cv-33-FtM-29SPC

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                 Defendant.

_____

**REPORT AND RECOMMENDATION[1]**

**TO THE UNITED STATES DISTRICT COURT**

       This matter comes before the Court on Plaintiff, Kathleen Pequigney's Complaint seeking review of the final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's claim for disability insurance (Doc. #1) filed on January 27, 2011.   Plaintiff's Memorandum of Law in Support of the Complaint (Doc. #23) was filed on November 4, 2011.   The Commissioner filed its Memorandum in Support of the Commissioner's Decision (Doc. #24) on January 3, 2012.   Thus, the Motion is ripe for review.

       The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case and issues the following Report and Recommendation.

_____

[1]This Report and Recommendation addresses only the issues brought up for review by the District Court pursuant to 42 U.S.C. § 405(g).

## FACTS

### *Procedural History*

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on December 4, 2006, alleging disability beginning on February 1, 2000. (Tr. 55, 72-81). The Agency denied this application initially on March 2, 2007, and on reconsideration on July 5, 2007. (Tr. 55-56, 59-62, 66-68). Administrative law judge (ALJ) Thurman Anderson held a video hearing on June 18, 2009. (Tr. 20-34). At the hearing, Plaintiff appeared and testified. Plaintiff was represented by an attorney. The ALJ issued an unfavorable decision dated August 4, 2009, denying Plaintiff's claims. (Tr. 12-19). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-5). As a consequence, on January 27, 2011, Plaintiff timely filed a Complaint with this Court. (Doc. #1). This case is ripe for review under 42 U.S.C. § 1383(c)(3), which incorporates by reference 42 U.S.C. § 405(g).

### *Plaintiff's History*

Plaintiff's insured status expired on December 31, 2004. (Tr. 87). At that time, she was 43-years old. (Tr. 74). Plaintiff has a high school education (Tr. 101-02) and previously worked as a licensed practical nurse. (Tr. 105-12). Plaintiff claims she became disabled on February 1, 2000, due to systemic lupus, fibromyalgia, sacroidosis, diabetes, costochondritis, renal tubular acidosis, chronic obstructive asthmatic, lung problems, hypothyroidism, hypertension, and chronic kidney stones. (Tr. 93).

*Medical Evidence*

Medical evidence indicates that during the relevant time period, Plaintiff suffered from a series of illnesses, including: renal tubular acidosis, polycystic ovarian syndrome, pulmonary sarcoidosis, MRSA, recurrent pneumonia, recurrent bronchitis, shortness of breath, wheezing, irregular menses periods, dysmetabolic syndrome, and borderline diabetes. (Tr. 170, 177, 205, 225, 229, 302, 306-307, 310, 474, 514, 586, 590). During this period Plaintiff made numerous visits to different physicians, including visits to nephrologist Ronald Delans, M.D., infectious disease specialist Ronica Kluge, M.D., obstetricians Kevin Fleishman, M.D., and Michael Weiss, M.D., pulmonary specialist Sunil Lalla, M.D., and urologist William Evans, M.D.

Due to her renular tubular acidosis, Plaintiff has passed reportedly multiple kidney stones in her lifetime. (Tr. 184). She claims she was unable to treat her kidney stone problem due to inability to tolerate kidney stone medication, including Urocit-K, which caused severe diarrhea. (170, 172, 184, 188, 420, 595, 626). Plaintiff's kidney stone problem has reportedly caused her flank pain throughout the years. (Tr. 172, 183,186, 253, 307-308, 357, 573, 595, 618).

Shortly before December 31, 2004, Plaintiff's date last insured, Dr. Evans noted that Plaintiff had left flank pain for approximately three weeks. (Tr. 626). On November 16, 2004, he noted that Plaintiff had left ureteral calculus (kidney stones), which was unresolved without treatment. (Tr. 623). November 19, 2004, scan of Plaintiff's abdomen confirmed that Plaintiff had stones in both kidneys. (Tr. 613). On December 7, 2004, Plaintiff's left side pain intensified and became so severe that Dr. Evans had to perform a kidney stone removal operation on Plaintiff on December 8, 2004. (Tr. 618, 627). However, Dr. Evans was unable to locate any kidney stones and terminated the procedure, concluding that Plaintiff probably had already passed the kidney stones herself. (Tr. 627).

In addition, Plaintiff suffered from pain in her ovaries due to polycystic ovarian syndrome, which sometimes was difficult to distinguish from her kidney stone pain. (Tr. 306-307, 310, 502). The record includes various scans confirming that Plaintiff had problems with ovarian cysts throughout the years. (Tr. 175, 195, 262, 307, 311). On November 17, 2003, Dr. Fleishman noted that due to certain treatments Plaintiff was becoming more and more symptomatic of fatigue and weight gain and developed adnexal cysts and pain. (Tr. 310). On March 8, 2004, due to Plaintiff's irregular periods, ovarian cysts, and pelvic pain, Dr. Fleishman suggested that Plaintiff may be a good candidate for Medormin therapy for type II diabetes control (Tr. 306).

After December 31, 2004, claimant's date last insured, claimant was diagnosed with a variety of other diseases, including: lupus, type II diabetes mellitus, fibromyalgia, and stage III chronic kidney disease. (Tr. 633, 655).

### Administrative Law Hearing Before the ALJ

On June 18, 2009, the ALJ held the administrative law hearing. (Tr. 12, 20). At the hearing, Plaintiff appeared and testified. (Hearing Transcript at 20-34). At the hearing Plaintiff testified that she is disabled because she is very ill and developed very bad pneumonia. (Tr. 23). Doctors have difficulties treating Plaintiff because antibiotics do not help. (Tr. 23). As a result, Plaintiff had been admitted on and off to intensive care, had been hospitalized for several years, and suffered "a lot of" lung damage. (Tr. 23). She also suffers from shortness of breath and pain in her joints. (Tr. 23). She has pain in muscles due to fibromyalgia and costochondritis in her chest. (Tr. 23-24).

Plaintiff further testified that she constantly develops kidney stones due to renal tubular acidosis. (Tr. 25). Plaintiff feels the pain caused by kidney stones in her flanks, abdomen, and bladder. (Tr. 25-26). Plaintiff stated that the only medication that her doctors said could help her

was Urocit-K, but she is unable to tolerate it because it causes her to suffer severe diarrhea. (Tr. 26). She has gone to different gastroenterologists trying to find medication that would help, but nothing has helped. (Tr. 26).

Plaintiff suffers from sarcoidosis, which is an autoimmune disease that caused growths in her chest and lung disease. (Tr. 26-27). It also affected her other organs. (Tr. 27). In 2003, due to this problem, claimant lost a lot of weight and was constantly coughing. (Tr. 26-27). Plaintiff also suffers from headaches caused by sarcoid, which she reported to Dr. Kluge in July, 2003. (Tr. 27). Plaintiff suffers from them frequently and they last for about a day. (Tr. 27).

Between 2000 and 2003 Plaintiff testified that she also suffered from problems with menstrual periods and excessive bleeding. (Tr. 28). She sometimes bled for months. (Tr. 28). The bleeding caused weakness. (Tr. 28). Plaintiff compared it to cramping after pregnancy, except it lasted for months. (Tr. 28). Plaintiff was given medication, but it only temporarily stopped the bleeding. (Tr. 28). The bleeding would come back a month or so later, she would have an ovarian cyst, and severe pain in her ovaries. (Tr. 28).

Plaintiff further explained that the pain in her flanks and the pain due to ovarian cysts are two separate types of pain. (Tr. 28). These two types of pain can sometimes be in similar locations. (Tr. 28-29).

Claimant testified that the only job she had been performing during the relevant fifteen-year period was as a licensed practical nurse. (Tr. 24). She testified that she would have been unable to perform this job back in 2004 because pain and walking would exhaust her. (Tr. 29). Walking causes shortness of breath, and sometimes, when she simply is walking around the house, she must stop, feeling like she is going to collapse. (Tr. 29). At that point, she needs to lie down until she

feels better. (Tr. 29). She stated that she could walk for about fifteen minutes before she would have those types of problems. (Tr. 29-30).

While working as a nurse, she lifted something as heavy as twenty-pound medication bottles and two hundred-pound patients. (Tr. 30). In 2004, the most Plaintiff could lift was a gallon of milk. (Tr. 30). Anything heavier than that would cause her chest pain (Tr. 30).

She also has problems standing because she becomes fatigued very easily. (Tr. 30). Sitting was also a problem because "everything just stiffens up in a chair." (Tr. 31). She could sit for several minutes, but then everything would stiffen up. (Tr. 31).

Plaintiff had to take potassium, but it just "killed" her stomach. (Tr. 31). She suffers from frequent bronchitis problems which require a long time to recover. (Tr. 32). Plaintiff also suffers from methicillin-resistant staphylococcus aureus ("MRSA"). (Tr. 32). Back in 2004, she had to go to the hospital every couple of months due to this condition and had to use antibiotics at home. (Tr. 32). This continued for a couple of years. (Tr. 32). She was hospitalized despite antibiotics because active MRSA caused shortness of breath and constant pneumonia. (Tr. 32).

Plaintiff further testified that she suffers from a variety of illnesses, but they all have several symptoms—shortness of breath, wheezing, congestion—and it is difficult to say which of those illnesses causes her shortness of breath. (Tr. 33). Plaintiff testified she had problems falling asleep because every time she laid her head down she would suffer from loud wheezing. (Tr. 33). This caused cough all night long, which in turn, aggravated her pain. (Tr. 33). It also made her tired during the day. (Tr. 33).

*Administrative Law Judge's Decision*

On August 4, 2009, after reviewing all of the evidence and testimony, ALJ Thurman Anderson issued a "Notice of Decision - Unfavorable." (Tr. 12-19). In making his decision, the ALJ performed a five-step sequential disability analysis as outlined in 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of February 1, 2000, through her date last insured of December 31, 2004. (Tr. 14). At step two, the ALJ found that Plaintiff has the following severe impairments through her date last insured: sarcoidosis, hypertension, renal stones, history of recurrent urinary tract infections, and respiratory disease (Tr. 14). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 15).

In the residual functional capacity ("RFC") assessment, the ALJ found that Plaintiff has the residual functional capacity to: "[p]erform the full range of light work … except she should avoid exposure to fumes, odors, dusts, gases, poor ventilation, etc.; and other hazards (such as, machinery, heights, etc.)" (Tr. 15).

At step four, the ALJ found that Plaintiff would be unable to perform any past relevant work. (Tr. 17). After finding Plaintiff could not perform her past work through the date her insured status expired (Tr. 17 finding 6), the ALJ determined she could have performed other jobs that existed in significant numbers in the national economy, given her age, education, work experience, and RFC. (Tr. 18 finding 10). At step five, the ALJ concluded—based on his determination that Plaintiff can perform a full range of light work—that a finding of "not disabled" is directed by Medical-Vocational Rule 202.21 found in 20 C.F.R. Part 404, Subpt. P, App. 2. (Tr. 18). The ALJ

concluded Plaintiff was not disabled at any time from February 1, 2000, the date she allegedly became disabled, through December 31, 2004, the date her insured status expired. (Tr. 18 finding 11).

## STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence. Hibbard v. Comm'r, 2007 WL 4365647 at *2 (M.D. Fla. Dec. 12, 2007) (citing Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988)). In evaluating whether a Plaintiff is disabled, the ALJ must follow the sequential inquiry described in the regulations (20 C.F.R. §§ 404.1520(a), 404.920(a)). The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability. The steps are as follows:

Step 1. Is the Plaintiff engaged in substantial gainful activity? If the Plaintiff is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.

Step 2. Does the Plaintiff suffer from a severe impairment? If not, then the Plaintiff is not disabled. If there is a severe impairment, the ALJ moves on to step three.

Step 3. Does the Plaintiff's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, then the Plaintiff is disabled. If not, the next question must be resolved.

Step 4. Can the Plaintiff perform his or her former work? If the Plaintiff can perform his or her past relevant work, he or she is not disabled. If not, the ALJ must answer the last question.

Step 5. Can he or she engage in other work of the sort found in the national economy? If so, then the Plaintiff is not disabled. If the Plaintiff cannot engage in other work, then he or she is disabled. See 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

The Commissioner's findings of fact are conclusive if supported by substantial evidence (42 U.S.C. § 405(g)). "Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Hibbard, 2007 WL 4365647 at *2 (citing Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838B39 (11th Cir. 1982))); Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." Phillips, 357 F.3d at 1240 n.8; Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).

## DISCUSSION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted, or can be expected to last, for a continuous period of not less than twelve (12) months (42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505). The impairment must be severe,

making the plaintiff unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy (42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505 - 404.1511). To determine whether the plaintiff is disabled, the ALJ is required to evaluate the claim according to the established five-step evaluation process.

The Plaintiff states that the ALJ committed two errors for which this case should be revered and remanded for further development or for payment. Specifically, Plaintiff alleges: (1) the ALJ should have consulted a vocational expert; or in the alternative, the environmental restrictions in the RFC assessment are vague and warrant a remand for a determination of the extent of Plaintiff's environmental limitations; and (2) the ALJ failed to properly consider Plaintiff's kidney stone impairment, alone or in combination with other impairments, and failed to properly consider evidence showing that Plaintiff was disabled due to pain. The Court will consider each of these issues below.

*1.  Whether the ALJ should have consulted a vocational expert; or in the alternative, whether the environmental restrictions in the RFC assessment are vague*

In this case, the ALJ stated in the RFC assessment that the Plaintiff had the RFC to perform the full range of light work except that she "should avoid exposure to fumes, odors, dusts, gases, poor ventilation, etc.; and other hazards (such as machinery, heights, etc.)." (Tr. 15). Plaintiff argues the ALJ's RFC does not specify the level of exposure to environmental conditions which the Plaintiff should avoid and that the language lacks a modifying adjective, implying that Plaintiff should avoid *any* exposure to environmental conditions. Therefore, Plaintiff argues that Plaintiff's environmental restrictions, as identified by the ALJ, would have a considerable impact on her ability to work. Given this, Plaintiff alleges that the ALJ should have consulted a vocational expert to determine whether there is any work available for an individual with claimant's limitations citing

S.S.R. 85-15 ("Where the environmental restriction falls between very little and excessive, resolution of the issue will generally require consultation of occupational reference materials or the services of a VE."). Plaintiff states that her condition warrants significant environmental limitations since she suffers from pulmonary sarcoidosis, MRSA, recurrent pneumonia, recurrent bronchitis, shortness of breath, and wheezing. (Tr. 205, 225, 229, 302, 586). She argues that the ALJ should have had a vocational expert at the hearing in order to determine whether the work Plaintiff may perform as directed by Medical-Vocational Guidelines (aka "the Grids") is substantially eroded by Plaintiff's environmental limitations. The Government counters that Plaintiff's environmental restrictions did not require the ALJ to procure testimony from a vocational expert.

In this case, after using the Grids to determine Plaintiff was not disabled, the ALJ determined Plaintiff had exertional limitations and therefore could perform only light work, except that she should avoid exposure to fumes, odors, dusts, gases, poor ventilation, etc.; and other hazards (such as machinery, heights, etc.). (Tr. 15). In making that finding, the ALJ considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. The ALJ also considered opinion evidence.

In support, Plaintiff cites to SSR 85-15, which states that when the "environmental restriction falls between very little and excessive, resolution of the issue will generally require consultation of occupational reference materials or the services of a VE" to support her argument that the ALJ should have called a vocational expert to determine whether there is any work available for an individual with Plaintiff's limitations rather than rely on the Grids. The Government argues that the Social Security Ruling cited by Plaintiff does not apply in this case, noting that "SSR[]85-15 applies when the claimant has 'solely nonexertional impairments.'" Searight v. Astrue, 2008 WL 2439750,

*2, n.4 (M.D. Fla. June 13, 2008) (quoting <u>Williams v. Halter</u>, 135 F. Supp. 2d 1225 (M.D. Fla. 2001)). The Government's argument is well taken. In this case, the ALJ determined that Plaintiff had *exertional* limitations and therefore could perform only light work. (Tr. 15). Therefore, the ruling that does apply in this matter is SSR 83-14, which applies to situations where a claimant has a "combination of exertional and nonexertional impairments." Under this ruling, which was cited by the ALJ in his opinion (Tr. 18), the ALJ stated that "[w]hen the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitation. If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines [aka "the Grids] provides a framework for decisionmaking." (Tr. 18).

Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); <u>Augusto</u>, 2008 WL 186541 at *7 (citing <u>Heckler v. Campbell</u>, 461 U.S. 458, 103 S. Ct. 1952, 76 L. Ed.2d 66 (1983) (holding exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." <u>Augusto</u>, 2008 WL 186541 at *7 (citing <u>Walter v. Bowen</u>, 826 F.2d 996, 1002-3 (11th Cir.1987)). In almost all of such cases, the Commissioner's burden can be

met only through the use of a VE. <u>Augusto</u>, 2008 WL 186541 at *7 (citing <u>Foote</u>, 67 F.3d at 1559). It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a VE to establish whether the claimant can perform work which exists in the national economy. <u>Augusto</u>, 2008 WL 186541 at *7. In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. <u>Id.</u> (citing <u>Foote</u>, 67 F.3d at 1559).

In this case, the ALJ determined that Plaintiff had *exertional* limitations and therefore could perform only light work (Tr. 15), which was supported by substantial evidence. Therefore, it was unnecessary to call a VE to establish whether the Plaintiff could perform work which exists in the national economy and reliance on the Grids was appropriate.

In the alternative, Plaintiff argues that the ALJ's failure to determine the extent to which Plaintiff is limited by environmental restrictions led to a vague RFC and a decision unsupported by substantial evidence, arguing that in performing the RFC assessment, the ALJ must consider the extent of such limitations. S.S.R. 96-8p; 20 C.F.R. § 404.1545(d). And that while in this case the ALJ determined that Plaintiff had environmental limitations, he failed to determine the extent of such limitations which rendered the RFC assessment vague and useless. In support, the Plaintiff cites to the ALJ's reliance on the opinions of Gary Cater, D.O., and Thomas Peele, M.D., regarding Plaintiff's environmental limitations when he states that they "deserve some weight." (Tr. 17, second full paragraph). Plaintiff alleges that the ALJ did not specify whether he fully accepted their opinions with respect to these limitations, and that the language the ALJ used in the RFC assessment suggests to the contrary. Plaintiff finishes by stating that the ALJ's conclusion that Plaintiff "should

avoid exposure to fumes, odors, dusts, gases, poor ventilation, etc.; and other hazards (such as, machinery heights, etc.)," (Tr. 15), implies that Plaintiff should avoid this type of exposure *completely*.

The Government argues that Plaintiff's assumption is incorrect as a fair reading of the ALJ's decision, including his determination that Plaintiff was not credible and reliance on the opinions of Drs. Gary Cater and Thomas Peele, shows he determined Plaintiff should avoid only concentrated exposure to certain environmental conditions. See Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). Regarding credibility, Plaintiff continued smoking during the relevant period and before despite doctors telling her she needed to quit. Plaintiff reported smoking in February 2003 (Tr. 497); in October 2003, she reported smoking a pack per day (Tr. 577). In January 2004, Dr. Fleishman observed Plaintiff "continues to smoke and was encouraged to stop." (Tr. 308). The ALJ noted this fact in his opinion. (Tr. 16). In February 2004, Plaintiff again reported smoking a pack of cigarettes per day. (Tr. 176). That same month, Dr. Michael H. Weiss observed Plaintiff smokes one pack per day (Tr. 177), and Dr. Richard J. Weiss reported Plaintiff "continues to smoke one pa[c]k per day despite her respiratory problems." (Tr. 513). Plaintiff again reported smoking in November 2004, one month before her insured status expired. (Tr. 87, 622). Plaintiff's ability to continue smoking despite her respiratory impairments supports the ALJ's determination that the impairments were not as extreme as Plaintiff alleged. Moreover, this evidence also suggests the ALJ determined Plaintiff should avoid only concentrated exposure to certain environmental conditions, rather than "any exposure" as Plaintiff claims. (Pl.'s Br. at 9).

The ALJ also relied on two physicians' medical opinions that Plaintiff should avoid only "concentrated exposure" to certain environment conditions, further suggesting the ALJ did not determine Plaintiff should "avoid any exposure to environment conditions." (Pl.'s Br. at 9). In March 2007, Dr. Gary Cater reviewed the medical evidence, determined Plaintiff could perform light work, and further determined she should avoid only "concentrated exposure" to fumes, odors, dusts, gases, poor ventilation, and similar condition. (Tr. 390). Similarly, Dr. Thomas Peele reviewed the medical evidence in July 2007, determined Plaintiff could perform light work, and further determined she should avoid only "concentrated exposure" to fumes, odors, dusts, gases, poor ventilation, and similar condition. (Tr. 454). After acknowledging that Dr. Cater's and Dr. Peele's opinions generally should not receive as much weight as those of examining or treating physician's, the ALJ determined they nevertheless deserve "some weight." (Tr. 17) and limited Plaintiff to light work (Tr. 15 finding 5). The Court agrees that the ALJ's reliance on these opinion weigh against Plaintiff's assumption that the ALJ determined she should avoid "any exposure" to certain environmental conditions.

In the alternative, Plaintiff argues that the environmental restrictions on the RFC are vague and useless as the ALJ did not consider the extent of such restrictions. Specifically, Plaintiff alleges that while in this case the ALJ determined that Plaintiff had environmental limitations, he failed to determine the extent of such limitations as required by S.S.R. 96-8p; 20 C.F.R. 404.1545(d), and this rendered the RFC assessment vague and useless for the purposes of determination of Plaintiff's disability. The Government responds that the ALJ's determination that Plaintiff's claims of disabling respiratory impairments were not entirely credible and reliance on Dr. Cater's and Dr. Peele's opinions show that the ALJ found that Plaintiff should avoid concentrated exposure to

environmental conditions.

The Government's argument is well taken. "'While we may not supply a reasoned basis for [an] agency's action that the agency itself has not given, we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" Dixon v. Astrue, 312 F. App'x 226, 229 (11th Cir. 2009) (quoting Zanhd v. Sec'y, Dep't of Agric., 479 F.3d 767, 773 (11th Cir. 2007)); see Henry v. Barnhart, 156 F. App'x 171, 174-75 (11th Cir. 2005) (finding that because the ALJ did not dispute the medical opinion in question, he implicitly gave it great weight). In this case, the ALJ's discussion of and reliance on the opinions of Drs. Cater and Peele's opinions that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. demonstrate that these were the restrictions that were implicit in the RFC assessment. Therefore, remand is not warranted on this issue.

2. *Whether the ALJ failed to properly consider Plaintiff's kidney stone impairment, alone or in combination with other impairments, and failed to properly consider evidence showing that Plaintiff was disabled due to pain*

In his decision, the ALJ found that Plaintiff's complaints due to her kidney stones were not fully credible for the following reasons:

> The record … demonstrates that although the claimant has received various forms of treatment for the allegedly disabling symptoms, which would normally weigh somewhat in the claimant's favor, the treatment has been generally successful in controlling those symptoms. On July 26, 2000, the claimant presented to Dr. Ronald Delans, M.D., due to numerous kidney stones. Dr. Delans noted that the claimant had numerous stones but she has been able to pass them all.… On November 22, 2002, the claimant informed Dr. Ronica Kluge, M.D., that her pain had improved…. On February 6, 2004, Dr. Kluge noted that the claimant's basic medical problems were stable except for her pulmonary status. (Tr. 16).

Plaintiff argues that this reasoning lacks logic and indicates that the ALJ improperly considered the record. The Government argues that substantial evidence supports the ALJ's

evaluation of Plaintiff's kidney stones and alleged pain.

Pain is a non-exertional impairment. <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1243 n. 11 (11th Cir. 2004). Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g. medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423 (d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard." <u>Foote</u>, 67 F.3d at 1560.

The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. <u>Holt v. Sullivan</u>, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, <u>Marbury v. Sullivan</u>, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423 (d)(5)(A).

In this case, at the administrative hearing, Plaintiff testified she had kidney stones "constantly," pain "always," and blood in her urine "all the time." (Tr. 25). In January 2000, however, a renal ultrasound showed "[n]o discrete [kidney] stone" and only "mild" kidney swelling (hydronephrosis) (Tr.382). Although renal ultrasounds In July 2002 showed kidney stones (renal

calculi) (Tr. 368, 573), there was "no evidence of hydronephrosis, mass, or perineperic fluid collections." (Tr. 573). Plaintiff reported "mild to moderate" flank pain in September 2002. (Tr. 522), but an IVP in August 2002 showed kidney stones with no evidence of hydronephrosis and "normal" ureters and bladder. (Tr. 571). Similarly, x-rays of Plaintiff's abdomen in November 2002 revealed no evidence of kidney stones (Tr. 366), and a renal ultrasound that month showed only a "tiny" left renal calculus and "mild" fullness of Plaintiff's right renal pelvis. (Tr. 569). Dr. William B. Hearn determined these finders were "nonspecific and may be the normal pattern for this patient." (Tr. 569).

In January 2003, a CT scan of Plaintiff's abdomen showed her kidneys were "unremarkable" (Tr. 299, 467), and an x-ray of her abdomen showed "no evidence of renal obstruction." (Tr. 557). Despite Plaintiff's complaints in January 2004 of multiple kidney stones and recurrent severe crampy pain on her left-side (Tr. 307, 357), a February 2004 ultrasound of Plaintiff's abdomen and pelvis showed her kidneys were "normal in size and appearance without mass, stone, or hydronephrosis." (Tr. 284). In March 2004, a spiral CT scan showed "no evidence of stones" (Tr. 306), and a CT scan revealed no kidney stones. (Tr. 524). In February 2004, Dr. Kluge observed Plaintiff's "basic medical problems are stable except for her pulmonary status" (Tr. 591). In November 2004, Plaintiff reported left-sided pain for the past month. (Tr. 624). Dr. William P. Evans observed the pain "has become slightly more intense although she is tolerating it fairly well" (Tr. 626), determined Plaintiff may have a stone (calculus) in her ureter (Tr. 620), and recommended conservative treatment. (Tr. 626). A November 2004 CT scan of Plaintiff's pelvis showed kidney stones (Tr. 613), but "[n]o hydronephrosis." (Tr. 614). Moreover, Dr. John Lauris Wade observed these "small stones . . . are not visible on the prior ultrasound." (Tr. 615). A subsequent procedure to remove any possible

kidney stones in December 2004 revealed no stones. (Tr. 627). Several months later, in February

2007, a CT scan of Plaintiff's pelvis showed "no acute abnormalities" (Tr. 437), and a CT scan of

her abdomen showed her renal stones were "nonobstructing." (Tr. 438). In this case, the ALJ noted

with regard to Plaintiff's kidney stones:

> The record also demonstrates that although the claimant has received various forms
> of treatment for the allegedly disabling symptoms, which would normally weigh
> somewhat in the claimant's favor, the treatment has been generally successful in
> controlling these symptoms. (Tr. 16).

The ALJ then went on to discuss the medical records which support this statements.

At the second step in the evaluation process, the ALJ is to "consider the medical severity of

the [Plaintiff's] impairments. 20 C.F.R. § 404.1520(a)(4)(ii). When considering the severity of the

claimant's medical impairments, the ALJ must determine whether the impairments, alone or in

combination "significantly limit" the claimant's "physical or mental ability to do basic work skills."

Phillips v Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004) (citing C.F.R. § 404.1520(c)). At the

second step, the Plaintiff bears the burden of proof that he suffers from a severe impairment or

combination of impairments. Gibbs v. Barnhart, 156 Fed. Appx. 243, 246 (11th Cir. 2005). An

impairment or combination of impairments is not severe if it "does not significantly limit [the

plaintiff's] physical or mental ability to do basic work activities," including: (1) "walking, standing,

sitting, lifting, pushing, pulling, reaching, carrying, or handling"; (2) "[c]apacities for seeing,

hearing, and speaking;" (3) "[u]nderstanding, carrying out, and remembering simple instructions;"

(4) "[u]se of judgment;" (5) "[r]esponding appropriately to supervision, co-workers and usual work

situations;" and (6) "[d]ealing with changes in a routine work setting." Id. (citing 20 C.F.R. §

404.1521(a),(b)). Where a claimant has alleged several impairments, the Commissioner has a duty

to consider the impairments in combination and to determine whether the combined impairments

render the claimant disabled. <u>Jones v Department of Health and Human Services</u>, 941 F.2d 1529, 1533 (11th Cir. 1991). An ALJ properly considers the Plaintiff's impairments in combination if he states that the Plaintiff does not have an impairment, or combination of impairments of sufficient severity to prevent him for engaging in any substantial gainful activity. <u>Gibbs</u>, 156 Fed. Appx. at 246 (citing <u>Wheeler v Heckler</u>, 784 F.2d 1073, 1076 (11th Cir. 1986)).

In this case, the ALJ considered Plaintiff's history of treatment for kidney stones and concluded that her medical issues with regard to the kidney stones were improving and were not sufficient to preclude her from engaging in substantial gainful activity. (Tr. 16). Therefore, substantial evidence supports the ALJ's determination that Plaintiff's treatment for kidney stones was generally successful.

With regard to the ALJ's credibility determination, an ALJ may examine the record, including Plaintiff's prior statements, in evaluating the credibility of her testimony. <u>See</u> 20 C.F.R. § 404.1529(c)(4). In January 2002, Plaintiff reported urinary burning and frequency, a history of kidney stones, and nodules in her breast; however, she was "otherwise without complaints." (Tr. 314). In March 2002, Plaintiff reported she had a history of kidney stones (nephrolithiasis), but currently had "[n]o liver of kidney problems." (Tr. 302). In October 2003, Plaintiff denied any blood in her urine, pain with urination, urgency, frequency, or involuntary urine loss. (Tr. 577). The Court agrees that Plaintiff's prior statements support the ALJ's decision not to accept her subsequent testimony that she had pain "always." (Tr. 25). <u>See</u> 20 C.F.R. § 404.1529(c)(4).

In November 2002, after complaints of kidney stones and a resulting lithotripsy, Plaintiff reported to Dr. Kluge that her pain had improved somewhat. (Tr.16, 592). The ALJ determined Plaintiff's November 2002 statement was additional evidence that her treatment generally resolved

her kidney stones. (Tr. 16).

The ALJ's determined that Plaintiff has "described daily activities which are not limited to the extent one would expect, given [her] complaints of disabling symptoms and limitations. (Tr. 17). At the administrative hearing in June 2009, Plaintiff indicated she could walk 15 minutes, sit for "several minutes," and pick up only a gallon of milk. (Tr. 29-31). In May 2004, however, Plaintiff "spent the weekend at Disney World, [and] did a lot of walking." (Tr. 589). Plaintiff's husband, John W. Pequigney, reported Plaintiff performs light house work and shops for one to two hours, albeit at a slower pace. (Tr. 122-23). Although Plaintiff claims her husband's statements are "hardly an indication that [she] can perform work" (Pl.'s Br. at 14), the evidence that Plaintiff could perform light housework and "d[o] a lot of walking" while at Disney World supports the ALJ's decision not to accept her subsequent testimony regarding her limitations. See 20 C.F.R. § 404.1529(c)(3)(i) (permitting ALJ to consider claimant's allegations of disabling symptoms in light of his or her daily activities). Since substantial evidence on the record supports the ALJ's credibility determination, remand on this issue is not warranted.

Accordingly, it is now **RECOMMENDED:**

The decision of the Commissioner should be **AFFIRMED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully recommended** at Fort Myers, Florida, this 19th day of February, 2012.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record